UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

   -against-                                                 1:04-CR-570
                                                                        (LEK)

JEREMY N. COUCH,

                Defendant.
_____

## **MEMORANDUM – DECISION AND ORDER**

      Presently before the Court is the United States' motion for reconsideration pursuant to Northern District of New York Local Rule 7.1(g) of the July 6, 2005 decision granting Defendant Jeremy Couch's ("Defendant") motion to suppress physical evidence and statements against him. For the following reasons, the Government's motion to reconsider is denied.

**I.    BACKGROUND**

      A full description of the facts surrounding this case can be found in this Court's decision regarding Defendant's motion to suppress. See United States v. Couch, 2005 U.S. Dist. LEXIS 13688 (N.D.N.Y. July 6, 2005) (Kahn, J.) (Dkt. No. 31) ("Suppression Decision"). For this motion to reconsider, the relevant facts are as follows. Defendant's sister, Kenya Rowe ("Rowe"), leased an apartment, 80 Steinmetz Homes, from Schenectady Municipal Housing Association ("SMHA") beginning on October 17, 2002. Id. at 1. Article 18 of the lease allows the landlord to "enter a unit, during reasonable hours, for routine inspections, repairs or maintenance, making improvements, or to show the apartment for releasing." Id. at 2.

On May 10, 2004, SHMA Tenant Investigator Denise Brucker ("Brucker") received numerous complaints concerning noise and individuals not on the lease entering Rowe's apartment. As a result, Brucker believed that possible lease violations were occurring, and on May 10, 2004, pursuant to Rowe's lease agreement and 24 C.F.R. § 966.4(j), sent a "Two (2) Day Entry Notice" to Rowe at 80 Steinmetz Homes by first class mail, informing her that a lease inspection was going to occur. Id.

On the morning of May 14, 2004, the lease inspection of 80 Steinmetz Homes took place. No search warrant was obtained prior to entry. Id. Brucker was accompanied by Arthur Zampella ("Zampella"), the SHMA Security Coordinator and a Sergeant with the City of Schenectady Police Department, William Gallop ("Gallop"), a SHMA representative and an officer with the Glenville Police Department, and a Schenectady County Sheriff's Department canine Zimmer, handled by Deputy David Leffingwell ("Leffingwell"). Id. The group entered through an unlocked back door after knocking and announcing their presence, and observed Defendant sleeping on the coach in the living room. Id. The upstairs portion of the apartment was inspected by Gallop, Leffingwell, and canine Zimmer for lease violations. Id. Defendant was then asked by Zampella to move to the kitchen so that the couch and living room area could be inspected, at which point Gallop observed that Defendant had a handgun in his waistband. Id. In response to his observation, Gallop yelled "gun", the officers restrained Defendant, took possession of the handgun, and placed Defendant in handcuffs. Id. After the handgun was seized from him, Defendant stated that the handgun was not his and that he had found it the night before. Id. Defendant was subsequently indicted on charges under 18 U.S.C. §§ 922(g) and

2

924(a)(2) for possession of a firearm after having been previously convicted of a felony. Id.

By order dated July 6, 2005, the Court suppressed the physical evidence and statements taken from Defendant on May 14, 2004 as evidence obtained in violation of the Fourth Amendment. The Court found that Officer Leffingwell was a direct and active participant in the lease inspection and was acting in his capacity as a police officer or as an agent of the Government at the time of the lease inspection, and therefore the inspection constituted government action which failed to comply with the Fourth Amendment. Suppression Decision (Dkt. No. 31) at 20. The United States filed the present motion to reconsider on July 20, 2005. Motion to Reconsider (Dkt. No. 33).

**II.    DISCUSSION**

    A.    Standard for Reconsideration

Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g). The "clearly erroneous" standard of review applies to motions for reconsideration. United States v. Chiochvili, 103 F. Supp. 2d 526, 528 (N.D.N.Y. 2000) (Kahn, J.). The moving party must "point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." John & Vincent Arduini Inc. v. NYNEX, 129 F. Supp. 2d 162, 167 (N.D.N.Y. 2001) (Kahn, J.) (quoting Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995)).

Generally, the prevailing rule in the Northern District "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the

need to correct a clear error of law or prevent manifest injustice." Chiochvili, 103 F. Supp. 2d at 528 (citing In re C-TC 9th Ave. P'ship, 182 B.R. 1, 3 (N.D.N.Y. 1995) (McAvoy, C.J.)); United States v. Gagnon, 250 F. Supp. 2d 15, 18 (N.D.N.Y. 2003) (Hurd, J.). As the Government has not presented an intervening change in controlling law or new evidence, the Court will consider this motion for reconsideration for clear error or prevention of manifest injustice.

"The law of the case will be disregarded only when the court has a clear conviction or error with respect to a point of law on which its previous decision was predicated." Chiochvili, 103 F. Supp. 2d at 528 (quoting Fogel v. Chestnutt, 668 F.2d 100, 109 (2d Cir. 1981) (quotations omitted)). "A simple difference of opinion, no matter how deep it runs, will not warrant reconsideration." Id.

      B.      Clear Error or Prevention of Manifest Injustice

           i.      Analogous Case Law

The Government asserts that analogous case law supports a finding that no constitutional violations occurred. Motion to Reconsider (Dkt. No. 33). In support of this argument, the Government cites United States v. Newton, 369 F.3d 659, 668 (2d Cir. 2004), in which the Second Circuit concluded that no Fourth Amendment violation occurred when uniformed police officers accompanied the defendant's parole officer to his home to conduct a search without a warrant. In Newton, subsequent to the defendant signing a standard certificate of release wherein he agreed to allow his parole officer to visit him at his residence and place of employment, and to permit the search of his person, residence, and property, the defendant's parole officer was informed that Newton had threatened to kill his mother and her husband, and that he had a

4

handgun in a shoe box by the front door. Newton, 369 F.3d at 663.  The next day Newton's parole officer, accompanied by two other parole officers and three uniformed police officers, went to Newton's home. Id.  The Second Circuit found that the parole officer's search was reasonable under the special needs exception to the Fourth Amendment warrant requirement and rejected the argument that the collaboration between the parole and police officers rendered the parole search unlawful. Id. at 667.

    Newton is distinguishable from the present case.  In finding that the presence of the police officers did not render the search unlawful, the Court in Newton noted that the duties and objectives of probation or parole officers and other law enforcement officials, although distinct, may frequently be intertwined and responsibly require coordinated efforts. Newton, 369 F.3d at 667 (discussing United States v. Reyes, 283 F.3d 446, 462-65 (2d Cir. 2002)).  The Newton court also found that the parole officers were responding to a complaint that the defendant had a handgun, that there was a substantial risk that Newton's response to any inquiry might be violent, and that it was therefore reasonable for the parole officers to solicit the assistance of police officers in entering the defendant's home. Newton, 369 F.3d at 663.

    The coordination in the present case is substantially different.  Here, the coordination occurred between SMHA, a municipal housing authority, and the Schenectady County Sheriff's Department, not two intertwined law enforcement entities.  Unlike in Newton, there was no known risk of a firearm or violence to justify the presence of police officers, and the involvement of Officer Leffingwell and canine Zimmer cannot be considered "little". Newton, 369 F.3d 668.  Representatives of SMHA conducted the lease inspection for the purpose of locating possible

5

lease violations, specifically drug activity. Officer Leffingwell and canine Zimmer actively participated in the lease inspection and the stated reason for their involvement was to locate illegal substances. Therefore, the Court does not find <u>Newton</u> to be analogous to the present case and does not alter the Court's analysis and ultimate decision with respect to the Suppression Decision.

        ii.       Inevitable Discovery

Alternatively, the Government asserts that the inevitable discovery doctrine applies to the present case. Motion to Reconsider (Dkt. No. 33) at 9.

The inevitable discovery exception to the exclusionary rule "allows evidence initially detected as the result of unlawful government conduct to be introduced nonetheless 'if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" <u>United States v. Whitehorn</u>, 829 F.2d 1225, 1230 (2d Cir. 1987) (quoting <u>Nix v. Williams</u>, 467 U.S. 431, 444 (1984)). "The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." <u>United States v. Eng</u>, 997 F.2d 987, 990 (2d Cir. 1993). "[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment . . . ." <u>Nix v. Williams</u>, 467 U.S. 431, 444 (1984).

The Government contends that in the absence of Officer Leffingwell, SMHA representatives would have obtained the very same evidence. Motion to Reconsider (Dkt. No. 33) at 9. Having determined that Officer Leffingwell's participation in the lease inspection was

more than incidental and thus the lease inspection constituted an illegal search, the Court must consider what would have been done had the illegal search never occurred. See United States v. Eng, 997 F.2d 987, 990 (2d Cir. 1993). As the Government chose not to raise the potential application of the inevitable discovery doctrine until this motion for reconsideration, no testimony was elicited from SHMA representatives, including Brucker, Zampella and Gallop, as to the time and manner of any lease inspection of 80 Stienmetz Homes that might have taken place in the absence of Officer Leffingwell and canine Zimmer. While the Court does deem it likely that SMHA representatives would have performed a lease inspection in the absence of Officer Leffingwell, it would be speculative to determine the time of the lease inspection, whether Defendant would have been present at the residence at that time, and that SMHA representatives would have viewed the weapon in the same manner that occurred when Officer Leffingwell was present. As a result, the Court does not find it inevitable that SHMA representatives would have obtained the same evidence without the illegal search and therefore the inevitable discovery doctrine does not apply.

The Court finds that the Government has failed to meet the demanding standard of clear error or manifest injustice. Therefore, the Court denies the United States' motion for reconsideration on the basis of prevention of manifest injustice.

## III.   CONCLUSION

Accordingly, it is hereby

ORDERED that the United States' Motion for Reconsideration is **DENIED**; and it is further

ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.

DATED:    September 14, 2005
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge